UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL PEREZ, <br><br> *Plaintiff,* <br><br> v. <br><br> DOVENMUEHLE MORTGAGE, INC., <br><br> *Defendant.* | Case No. 3:21-cv-176 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**PRELIMINARY STATEMENT**

1. Plaintiff Daniel Perez, an individual consumer, brings this action against Defendant Dovenmuehle Mortgage, Inc. for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.* ("RESPA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110 *et seq.* ("CUTPA"), and for Breach of Contract, based upon Defendant's extreme mishandling of Plaintiff's mortgage loan account, including repeated mortgage servicing errors made in connection with a pandemic-related mortgage forbearance governed by the CARES Act.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction pursuant to 12 U.S.C. § 2614, *et seq.*

3. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity), as the parties are diverse and the amount in controversy exceeds $75,000.

4. This Court has supplemental jurisdiction to hear all state law statutory claims pursuant to 28 U.S.C. § 1367.

5. This Court also has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and an amount in controversy greater than $75,000.

6. Venue in this District is proper as both a substantial part of the events or omissions giving rise to the claims asserted herein occurred and a substantial part of property that is the subject of the action is in this District.

## PARTIES

7. Defendant Dovenmuehle Mortgage, Inc. ("DMI") is a federal savings bank organized under the laws of the United States with its principal offices in Illinois.

8. DMI regularly engages in the servicing of mortgage in Connecticut and does substantial business in Connecticut.

9. Plaintiff Daniel Perez is a natural person and a resident of Norwalk, Connecticut.

## FACTUAL ALLEGATIONS

10. In response to the COVID-19 pandemic, Congress and the President of the United States passed the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 ("CARES Act") to provide relief to Americans and American businesses suffering from the resulting health and economic crisis.

11. The CARES Act authorizes homeowners with a federally backed mortgage loan to request a forbearance for up to 180 days, with a right to request an extension for up to another 180 days.

12. Homeowners requesting such a forbearance only need to claim that they are suffering from a pandemic-related financial hardship; no additional documentation is required to qualify.

13. Specifically, the CARES ACT states in relevant part as follows:

>  (b) FORBEARANCE.—
>
>  >  (1) IN GENERAL.-- During the covered period, a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID–19 emergency may request forbearance on the Federally backed mortgage loan, regardless of delinquency status, by— (A) submitting a request to the borrower's servicer; and (B) affirming that the borrower is experiencing a financial hardship during the COVID–19 emergency.
>
>  >  (2) DURATION OF FORBEARANCE.—Upon a request by a borrower for forbearance under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower, provided that, at the borrower's request, either the initial or extended period of forbearance may be shortened.
>
>  . . .
>
>  (c) REQUIREMENTS FOR SERVICERS.—
>
>  >  (1) IN GENERAL.—Upon receiving a request for forbearance from a borrower under subsection (b), the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19 emergency and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.

14. Plaintiff is one of the qualifying homeowners with a federally-backed mortgage loan covered by the aforementioned forbearance provisions of the CARES Act.

15. Until November of 2020, DMI was Plaintiff's mortgage servicer with regard to Plaintiff's home, which is a stand-alone, single-family home located in Norwalk, Connecticut.

16. Plaintiff called DMI repeatedly in mid and late March 2020 to request forbearance due to the COVID pandemic.

17. Plaintiff 's DMI account was not late or in default at the time of these calls or at any relevant later time, but rather was in good standing.

18. DMI eventually sent Plaintiff a "Mortgage Assistance Application that required Borrower to sign a "Certification and Agreement" ("C&A") that contained numerous terms inconsistent with the CARES Act.

19. Notwithstanding the CARES Act's directive to allow forbearance "with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19", DMI required various additional information, authorization, and certifications. For example, the C&A required Plaintiff to "acknowledge and agree that my servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request."

20. The C&A also required Plaintiff to consent to the servicer obtaining Plaintiff's credit report and to disclosure of "any personal information collected during the mortgage assistance process and of any information about any relief I receive", including Plaintiff's "social security number", "credit score", "income" and "payment history and information about my account balances and activity."

21. The C&A also required Plaintiff to agree that "the lender, servicer, or authorized third party" had permission to contact Plaintiff at "any telephone number, including [his] mobile telephone number."

22. The C&A was followed by a "Taxpayer First Act Acknowledgment" that required Plaintiff to authorize DMI to "acquire, access, utilize and share" Plaintiff's tax return with a wide

variety of parties, including "agents", "investors", "vendors" and "any other service providers" in connection with his forbearance.

23. The Mortgage Assistance Application also included a worksheet on which Plaintiff was required to provide an itemization of his household expenses.

24. Despite the fact that the information DMI required was not permissibly required under the CARES Act, Plaintiff provided all requested information, uploading the required documents and a cover letter dated March 27, 2020, confirming his request.

25. Plaintiff did so on March 27, 2020.

26. In response, DMI granted Plaintiff a 90-day forbearance, rather than the 180 day forbearance available under the CARES Act.

27. In June, 2020, DMI contacted Plaintiff by phone and inquired as to his situation and his intentions with regard to the forbearance, including whether he wished to extend it for another 90 days.

28. Plaintiff indicated unequivocally that he wished to take advantage of DMI's offer to extend for an additional 90 days, and was told on the call that the forbearance was extended.

29. Subsequently, in July 2020, Plaintiff was informed by his credit monitoring service that he had been marked 90 days delinquent on his DMI account, *i.e.* delinquent with regards to April, May and June of 2020 -- the period covered by his first 90 day forbearance.

30. The CARES Act states in relevant part:

> (I) ACCOMMODATION.—The term 'accommodation' includes an agreement to defer 1 or more payments, make a partial payment, forbear any delinquent amounts, modify a loan or contract, or any other assistance or relief granted to a consumer who is affected by the coronavirus disease 2019 (COVID–19) pandemic during the covered period.
> . . . '

    (ii) REPORTING.—Except as provided in clause (iii) [*which is not relevant to Plaintiff*], if a furnisher makes an accommodation with respect to 1 or more payments on a credit obligation or account of a consumer, and the consumer makes the payments or is not required to make 1 or more payments pursuant to the accommodation, the furnisher shall—''(I) report the credit obligation or account as current[.]"

31. Plaintiff called DMI on July 10, 2020 to find out why he was being incorrectly reported as delinquent.

32. The DMI representative informed Plaintiff that the system indicated that he had requested that his forbearance be cancelled.

33. Plaintiff informed the DMI representative that this was completely false, and that he had never asked that the forbearance be cancelled.

34. Plaintiff explained that, to the contrary (and as set forth above), Plaintiff had agreed with DMI to extend his forbearance.

35. The DMI representative confirmed that there had been an error on Defendant's part regarding the status of his account which led to the Defendant submitting the inaccurate information to the credit reporting agencies. Representative and assured the Plaintiff that the issue would be corrected and that the credit reporting agencies would be notified of the error.

36. Not wanting to rely solely upon the DMI representative's oral representations that the problem would be fixed, Plaintiff followed up by emailing DMI a dispute on July 10, explaining that he had been incorrectly marked as delinquent; recounting the history of the forbearance agreement, and again stating that he had never cancelled the forbearance agreement.

37. The July 10 email included a pdf letter version of his dispute, along with screenshots regarding the incorrect credit reporting.

38. The July 10 email (and the attached letter) recounted that Plaintiff was informed by a representative that there had been a request to cancel the forbearance agreement. Plaintiff

confirmed that no such request had been made by him or on his behalf, that in fact, he had requested an extension for the original forbearance request.

39. The July 10 email was sent to an address provided to Plaintiff by DMI at the time that Plaintiff called DMI to report the error.

40. Plaintiff received written confirmation of receipt of the July 10 email via email.

41. DMI responded by letter dated July 13, 2020 stating that it had "referred your inquiry to the appropriate area for review", but not providing a substantive response.

42. Plaintiff emailed DMI on July 16, 2020 requesting an update and informing DMI that two of his credit cards had been closed as a result of negative credit reporting and further stating, "[t]his needs to be fixed immediately.  Please respond."

43. Plaintiff followed up via email dated August 7, 2020 stating that the issue had not been corrected, and that he was still be reported as delinquent by Experian.

44. Plaintiff attached the supporting credit report to that August 7, 2020 email.

45. DMI did not respond.

46. On or about August 28, 2020, Plaintiff called DMI, and was informed that there was no status update regarding his dispute and putting his loan back in forbearance.

47. On that call, the DMI representative informed Plaintiff that the system reflected that there was no forbearance request or approval in place and payment for his account was due immediately.

48. On August 19, 2020, Plaintiff spoke by phone with a DMI Representative who informed the Plaintiff that everything would be reversed by the following month and that his forbearance was reinstated until December 2020.

49. A short time later, Plaintiff received a voicemail from a Dovenmuehle Mortgage, Inc. requesting a call back.

50. Plaintiff placed a call to Defendant's customer service and was attended to by an agent with initials "SMS" (agent number 4753). SMS informed the Plaintiff that she did not see any extension

51. By letter dated September 1, 2020, DMI – without overt reference to his dispute – notified Plaintiff that "[t]he original Agreement with suspended monthly payments of $0.00, from 4/01/2020 through 06/01/2020 (original date) has been extended and now reflects suspended monthly payments of $0.00, from 4/01/2020 through 09/01/2020 (extended date)."

**Mr. Perez has Suffered Damages as a Result of Defendants' Actions**

52. Plaintiff has suffered actual damages.

53. Specifically, although DMI eventually corrected Plaintiff's credit report, significant damage had already been done. As a result of the Defendant's actions described herein, including cancellation of two of his credit cards, each of which had balances of zero, a "paid as agreed credit history and significant available credit based on years of responsible use, Plaintiff has lost access to previously available credit, and his credit score has dropped significantly.

54. Although DMI eventually corrected Plaintiff's credit report, the cancellation of Plaintiff's credit cards due to DMI's misconduct has caused Plaintiff credit damage, significantly increasing his credit utilization percentage, lowering his credit score and causing credit denials and lost credit opportunities.

55. In addition, Defendant's actions have caused significant stress, aggravation, anxiety and emotional distress.

**DMI's Misconduct In This Case Is Part Of A Recurring Pattern & Practice**

56. The misconduct set forth herein is not an isolated instance but rather part of a larger, recurring policy and practice.

57. Most obviously, DMI's practice of putting CARES Act eligible homeowners into 90-day rather than 180-day forbearance programs is systematic and reflected in DMI's form/boilerplate correspondence (e.g. the "automated email" sent to Plaintiff on April 4, 2020 notifying Plaintiff that "Your 90 day forbearance plan has been activated in our system").

58. Nor were the other egregious forbearance servicing, dispute handling, and credit reporting errors suffered by Plaintiff "one-offs".

59. To the contrary, examination of publicly available consumer complaints submitted to the Better Business Bureau; the Consumer Financial Protection Bureau and numerous, less formal online review sites such as Google, Yelp and Wallet Hub reveals hundreds of complaints by consumers suffering from similar DMI system failures and misconduct.

60. Like Mr. Perez, these publicly available records – which assuredly represent only a tiny fraction of the consumers impacted– reflect large numbers of other consumers serviced by DMI who find their forbearance status changed for no apparent reason; who attempt to address servicing issues with DMI, including forbearance issues only to find that DMI has no record or an incorrect record of prior communications; find out after the fact that DMI has reported the consumer as 90 days late to the credit reporting bureaus and considers them to be delinquent when they are not.

### COUNT I:  VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

61. The foregoing allegations are realleged and incorporated herein by reference.

62.     On July 10, 2020, Plaintiff sent DMI a "qualified written request" as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding his mortgage account.

63.     In that qualified written request, Plaintiff provided specific information regarding DMI's servicing errors, stating that his account had been removed from the forbearance program on grounds that he requested removal but that he "NEVER MADE THAT REQUEST" and had had been told that he had in fact been "told that my forbearance would be extended through September 2020 due to COVID-19".

64.     In that qualified written request, Plaintiff requested that Defendant correct the error, i.e. that DMI "Please move me back into forbearance for the additional 90 days, and please contact the credit bureaus to fix this mistake on my report."

65.     Pursuant to 12 U.S.C. 2605(e)(2)(A), DMI had 30 days from July 10, 2020 to "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower)".  See also, 12 C.F.R. § 1024.35(e)(1); 12 C.F.R. § 1024.35(e)(3)(i)(c).

66.     DMI violated RESPA because it failed to make the necessary correction within 30 days and also in that it failed to transmit the notification of such correction within 30 days.

67.     Pursuant to 12 U.S.C. 2605(e)(3), DMI was prohibited from providing information to consumer reporting agencies regarding allegedly overdue payments related to her qualified written request for 60 days following its receipt of Plaintiff's July 10, 2020 qualified written request.

68. DMI violated RESPA by providing adverse information regarding the allegedly overdue payments to credit reporting agencies during this 60 day period.

69. As a result of these violations, Plaintiff is entitled to statutory damages, actual damages, attorney's fees and costs.

### COUNT II: UNFAIR ACTS AND PRACTICES UNDER CUTPA

70. The foregoing allegations are realleged and incorporated herein by reference.

71. DMI is a "person" within the meaning of Conn. Gen. Stat. § 42-110b, as defined in § 42-110a(3).

72. DMI engaged in unfair acts or practices within the meaning of Conn. Gen. Stat. § 42-110b(a) including, but not limited, to:

   a. Providing a shorter forbearance period than is available to Plaintiff under the CARES Act;

   b. Imposing additional requirements on Plaintiff in excess of what is permissible under the CARES Act;

   c. Removing Plaintiff from his 90-day forbearance when he did not request to be removed;

   d. Failing to provide Plaintiff with notice that he had been removed from the forbearance program;

   e. Adversely reporting delinquencies to the credit bureaus based on its wrongful removal of Plaintiff from the forbearance program;

   f. Failing to provide Plaintiff with the option to extend his forbearance for an additional 180 days as required under the CARES Act;

    g.  Repeatedly violating RESPA.

73.    DMI's actions have offended public policy, including the public policy purpose behind RESPA and the CARES Act.

74.    DMI's actions cause substantial injury to consumers, like Plaintiff, who are provided with shorter forbearance periods than those to which they are entitled; are removed from forbearance for no valid reason; are not provided with notice of this wrongful removal; have their credit damaged as a result of this forbearance servicing related misconduct; and/or are not provided with the opportunity to participate in an additional 180-days of forbearance.

75.    These injuries are not outweighed by any countervailing benefits to consumers that the conduct produces.

76.    As a direct, proximate, and foreseeable result of the foregoing acts, Mr. Perez suffered an ascertainable loss as that term is used in Conn. Gen. Stat. § 42-110g(a).

77.    Specifically, as outlined above, his credit was damages, his credit cards were cancelled, and he has suffered emotional distress.

78.    Defendants' conduct as set forth herein constituted an intentional and wanton violation of Plaintiff's rights and/or was done with reckless indifference to those rights.

79.    Defendants' knew that their conduct offended public policy or was recklessly indifferent to that policy, and knew that that their actions were without reasonable justification

80.    DMI's consistent contravention of public policy was willful, immoral, unscrupulous, unethical, and oppressive, and caused substantial injury to the Plaintiff.

81.    As a result of these violations, Plaintiff is entitled to actual damages, punitive damages, costs and attorney's fees.

## COUNT III: BREACH OF CONTRACT

82. The Plaintiff restates and incorporate all of the foregoing statements and allegations as if fully rewritten herein.

83. Plaintiff and DMI entered into an agreement to place Plaintiff's home loan into forbearance for 90 days and the formation of this agreement was acknowledged in writing by DMI, e.g., in its April 4, 2020 email confirming that "Your 90 day forbearance plan has been activated on our system."

84. Plaintiff did not breach this agreement or fail to perform in any way.

85. By removing Plaintiff from the forbearance plan without his permission and reporting him delinquent to the credit bureaus, DMI breached this agreement.

86. As set forth above, Plaintiff suffered significant damages as a result, including damage to his credit, cancellation of his credit cards, and emotional distress.

87. As a result of these breaches, Plaintiff is entitled to actual damages and costs.

## PRAYER FOR RELIEF

The Plaintiff respectfully requests that judgment be entered against the Defendants for the following:

(1) Actual damages (including consequential damages);

(2) Statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

(3) Punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a);

(4) Costs pursuant to 12 U.S.C. § 2605(f)(1)(C) and Conn. Gen. Stat. § 42-110g(d) and common law;

(5) Reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f)(1)(C), Conn. Gen. Stat. § 42-110g(d), and Conn. Gen. Stat. § 42-150bb.

(6) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted,

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
(*pro hac vice motion forthcoming*)
Schlanger Law Group, LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: (212) 500–6114
F: (646) 612–7996
dschlanger@consumerprotection.net

*/s/Jeffrey Gentes*
Jeffrey Gentes (ct28561)
Connecticut Fair Housing Center
60 Popieluszko Court
Hartford, CT  06106
(860) 263-0741
(860) 247-4236 (fax)
jgentes@ctfairhousing.org